## BREHM v. UNITED STATES.
### No. 11178.

United States Court of Appeals
District of Columbia Circuit.

Argued Feb. 18, 1952.

Decided April 24, 1952.

Leo A. Rover, Washington, D. C., with whom Clarence G. Pechacek, Washington, D. C., was on the brief, for appellant.

Floyd J. Mattice, Chicago, Ill., of the bar of the Supreme Court of Indiana, and Justinus Gould, Washington, D. C., of the bar of the Court of Appeals of Maryland, Attorneys, Department of Justice, pro hac vice, by special leave of Court, with whom Charles M. Irelan, U. S. Atty. at the time the brief was filed, Washington, D. C., was

on the brief, for appellee. George Morris Fay, U. S. Atty. at the time the record was filed, Joseph M. Howard, Asst. U. S. Atty., Nugent Dodds, Sp. Asst. Atty. Gen., and Benjamin F. Pollack, Attorney, Department of Justice, all of Washington, D. C., also entered appearances for appellee.

Before EDGERTON, PRETTYMAN and WASHINGTON, Circuit Judges.

PRETTYMAN, Circuit Judge.

This is an appeal from a judgment of conviction on five counts of a seven-count indictment. In the counts upon which appellant was convicted it was charged that on various dates he, being a Representative in Congress, received from one Emma S. Craven, employed as a clerk in his office, contributions upon various dates and in various amounts for the political purpose of assisting in financing his campaign for reelection as a Representative.

The statute under which the indictment was laid was Section 208 (now, as amended, Section 602) of Title 18 of the United States Code and read in pertinent part as follows: "It is unlawful for any * * * Representative in * * * Congress * * * to directly or indirectly solicit, receive, or be in any manner concerned in soliciting or receiving, any * * * contribution for any political purpose whatever, from any other such officer, employee, or person."

Appellant presents four contentions. His first contention is that the court should have granted his motion for judgment of acquittal, because the Government failed to prove that any of the contributions alleged to have been received by him were, as alleged in the indictment, received for the purpose of assisting in financing his campaign for reelection. The precise dispute of fact was whether the money which Mrs. Craven turned over to Brehm each month for a number of months preceding the election in November, 1948, was to assist Brehm in his own campaign or was to assist the state political campaign committee in other campaigns. Upon the trial the prosecutor conceded that, if the defendant re-

ceived the money for the political purposes of the national committee or the state committee, that receipt would not be a violation charged in this indictment.

The evidence on the point was conflicting but clearly necessitated submission to the jury, within the principle announced in Curley v. United States.[1] Briefly, Mrs. Craven testified that she was employed in Brehm's office with the understanding that her name would appear on the payroll at a "base salary" of $4,500 a year and that she would donate to "the Republican committee in Ohio" the amount by which that sum exceeded a "base salary" of $2,400. Because of certain increments in the pay of legislative employees, that difference was approximately $210 a month. She testified that she placed cash in that amount in an envelope and handed it to Brehm each payday and that he assured her he would forward it to the committee. In one instance she mailed cash to the defendant, who was then in Ohio. Other testimony introduced by the Government showed that the Brehm for Congress Committee, of which Mrs. Craven was nominally Secretary, contributed to the party state campaign finance committee the sum of $100 during the 1948 campaign, and that the Brehm committee in turn received funds from the state committee in the total sum of $2,500 during that campaign.

The Government also presented the testimony of Brehm before the grand jury which indicted him. That testimony was to the effect that Mrs. Craven approached him with a sealed envelope shortly after being employed in his office, and said:

"I know you got a tough district. I know you haven't got any patronage. I know the Republican Party had been out of power. I like my job. I am so grateful to you for getting me back on the Hill I'd like to do something, help out the party * * *."

Brehm said that he refused to accept the envelope, saying he did not want the money, but that he finally permitted Mrs. Craven to place it in a drawer of his file cabinet

1. 1947, 81 U.S.App.D.C. 389, 160 F.2d 229, certiorari denied, 1947, 331 U.S. 837, 67 S.Ct. 1511, 91 L.Ed. 1850.

in his office and told her: "If you want to keep it in here you can keep it in here and later on if the committee wants it you can give it to me and if we need it or use it * * *." Before returning to Ohio for the 1948 campaign Brehm showed the envelopes to another clerk in his office and instructed her that he might write her to send them to him. Brehm told the grand jury that there had been no call by the state committee for funds, that he had forgotten the envelopes, and that when he returned to Washington he returned all the envelopes unopened to Mrs. Craven. Mrs. Craven denied that any of the money was ever returned to her.

The jury might reasonably have concluded from this evidence that Brehm received the money from Mrs. Craven and that in doing so he had in mind his own campaign for reelection and not some other political purpose unconnected with himself.

■ Appellant's second point is that before there could be a verdict of guilty the jury must find that the giver and the receiver both knew and understood that the contributions were made for the political purpose charged in the indictment. ◦ The above-quoted section of the Code makes no reference to the giver but makes it a crime for a Representative to receive a contribution for a political purpose from any Government employee. We had a similar problem in May v. United States[2] and there pointed out that in that case the statutory offense could be committed by the Congressman and, although the offensive act necessarily involved the cooperation of two people, that the part played by one of them alone was made the criminal offense. The same reasoning applies to the present problem. So long as the Representative received the contribution for a political pur-

pose, it is immaterial whether the giver understood that purpose.

■ Appellant's third point is that the court erred in admitting evidence of offenses not alleged in the indictment and which had no connection with the offenses charged therein. In Count II of the indictment, on which the jury found Brehm not guilty, it was alleged that Brehm had received from one Clara Soliday, a clerk in his office, on or about February 3, 1948, the sum of $140 for the political purpose of assisting in financing his campaign for reelection. The Government was permitted to introduce in evidence testimony that similar contributions were made to the defendant by Mrs. Soliday each month during the years 1945, 1946 and 1947. One of the established exceptions to the rule which forbids evidence of other offenses is that such evidence may be admitted to establish a common scheme or purpose so associated that proof of one tends to prove the other, or if both are connected with a single purpose or in pursuance of a single object.[3] We think that evidence concerning other contributions by Mrs. Soliday for the same purpose over the period of time immediately prior to the transaction alleged in the indictment was admissible under this rule.

Appellant's fourth point is that the jury commission which selected the grand jury which returned the indictment, was illegally constituted and that the indictment was accordingly void. We examined this same point, concerning a grand jury drawn by the same jury commission, in Collazo v. United States,[4] and held against the present contentions of the appellant.

The judgment of the District Court must be and is hereby

Affirmed.

2. 1949, 84 U.S.App.D.C. 233, 175 F.2d 994, certiorari denied, 1949, 338 U.S. 830, 70 S.Ct. 58, 94 L.Ed. 505.

3. Bracey v. United States, 1944, 79 U.S. App.D.C. 23, 142 F.2d 85, certiorari de-

nied, 1944, 322 U.S. 762, 64 S.Ct. 1274, 88 L.Ed. 1589.

4. 1952, 90 U.S.App.D.C. ——, 196 F.2d 573, certiorari denied, 72 S.Ct. 1065.